IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| ELECTRONIC CONTRACTING COMPANY, a Nebraska corporation,<br><br>Petitioner,<br><br>vs.<br><br>K.C. PAGE & ASSOCIATES INC., d/b/a PROCRAFT MEDIA, a California corporation,<br><br>Respondent. | 4:25-CV-3127<br><br>MEMORANDUM AND ORDER |

The petitioner, the Electronic Contracting Company (ECC), has moved to confirm an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (filing 1), and the respondent, K.C. Page & Associates, Inc., doing business as ProCraft Media (ProCraft), has moved to vacate or modify the same (filing 16). The motion to confirm the award will be granted, and the motion to vacate or modify will be denied in its entirety.

## I. BACKGROUND

ECC received a fixed-price contract from the University of Nebraska-Lincoln for an expansion of the school's football and athletic facilities. Filing 5-4 at 2. ECC then subcontracted with ProCraft for labor and "various consumables" (likely specialty lighting installations, *see* filing 18-9 at 2). Filing 5-4 at 2. The contract was executed in July 2022. Filing 5-1 at 4. The parties' contract contained a valid and enforceable arbitration clause. *See* filing 5-1 at 2. Neither party contests the arbitrability of their agreement.

After many scheduling and work delays, ECC terminated the contract

and, a few months later, initiated arbitration for "Breach of contract by [ProCraft] due to failure to perform the work in accordance with the contract documents and overpayment of contract amounts." Filing 5-4 at 7; filing 18-9 at 1.[1] ProCraft asserted various counterclaims against ECC: breach of contract for early termination without cause, violation of duty of good faith and fair dealing, breach of implied-in-fact contract arising from a change order, and negligence in managing the project and causing delays. Filing 18-10 at 5.

After a four-day proceeding before an arbitrator in Lincoln, Nebraska, *see* filing 1 at 4, ECC was awarded $978,502.32. Filing 5-4 at 10. The arbitrator's final award detailed "critical, unavoidable issues" involving the project's timeline, which affected both parties. Filing 5-4 at 5. Ultimately, the arbitrator concluded that ECC's termination of the contract was justified because ProCraft "could not or would not commit" to dates certain when it "would return to complete its scope of work." Filing 5-4 at 7. The arbitrator identified three possible reasons ProCraft wouldn't commit: it was out of money, it was out of money for the particular project, or it "chose to hold ECC and the Project hostage" to "leverage or coerce ECC into prioritizing and/or forcing through some form of Extension Proposal." Filing 5-4 at 7.

According to the arbitrator, ECC had a reasonable "perception of ProCraft's repudiation and anticipatory breach . . . ." Filing 5-4 at 7. For weeks or months, ProCraft stopped showing up to the job, and did nothing to assuage ECC's fears that ProCraft intended to abandon its contractual obligations. Based on the evidence, the arbitrator found "that ECC made reasonably clear to ProCraft" on December 19, 2023, "that it was in breach, or at least

---

[1] ECC objects to this evidence, but doesn't really explain the basis of the objection. *See* filing 25 at 2. The objection is overruled.

anticipatory breach . . . and that termination or other legal recourse was imminent." Filing 5-4 at 9. Therefore, the arbitrator found ECC reasonably complied with the contract's requirements when it terminated the agreement a few days later, on December 22.

Based on ProCraft's breach of contract, the arbitrator calculated ECC's damages. The arbitrator found that ECC came out of pocket $1,070,285.24 to finish ProCraft's work, and ECC suffered "lost opportunity" costs in the amount of $208,217.08. ECC was able to mitigate its damages by $300,000, so the arbitrator awarded $978,502.32. Filing 5-4 at 9.

## II. STANDARD OF REVIEW

The Federal Arbitration Act "establishes a liberal policy favoring arbitration agreements." *Zeidman v. Lindell Mgmt. LLC*, 145 F.4th 820, 825 (8th Cir. 2025), cert. denied, No. 25-504, 2026 WL 79757 (U.S. Jan. 12, 2026) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)). Courts afford arbitrator's decisions "an extraordinary level of deference" when reviewing an award. *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004). Federal courts are not authorized to reconsider the merits of an award, even if the award rests on serious errors of fact or misinterpretation of the contract. *Id.*

An arbitration award may be vacated for the reasons enumerated in the Act, which include corruption, fraud, partiality, misconduct, or an abuse of power. 9 U.S.C. § 10; *see also* *Med. Shoppe Intern., Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010). Or, a court may modify an award only where there was an "evident material miscalculation of figures" or a material mistake in a description of persons or properties; the arbitrator awarded upon a matter not submitted; or "the award is imperfect in matter of form not affecting the

3

merits of the controversy." § 11.

An arbitration award may be vacated if it evidences "manifest disregard for law," though this standard is "extremely narrow." *Zeidman,* 145 F.4th at 826. Specifically, an arbitration award may be vacated as "irrational" if it "fails to draw its essence from the agreement," or if "the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." *Id.* But as long as the arbitrator is "even arguably construing or applying" the contract, and is "acting within the scope of his authority," a court has no authority to overturn his decision. *Id.*

Arbitration is not perfect, nor is it designed to be—rather, it is designed to "avoid the complex, time-consuming, and costly alternative of litigation." *Hoffman v. Cargill Inc.,* 236 F.3d 458, 462 (8th Cir. 2001). A party who agrees to arbitration "must subsequently abide by the rules to which it agreed." *Id.* at 463. The potential for legal mistakes "is the price of agreeing to arbitration." *Indus. Steel. Constr., Inc. v. Lunda Constr. Co.,* 33 F.4th 1038, 1042 (8th Cir. 2022).

## III. DISCUSSION

ProCraft argues the arbitration award is "erroneous and insufficient" for a number of legal reasons. Filing 17 at 10. ProCraft does not appear to challenge any of the arbitrator's factual findings. None of ProCraft's arguments clear the high bar to vacate an arbitration award.

Many of ProCraft's arguments are based on the arbitrator's alleged failure to address certain issues briefed by the parties. Filing 17 at 17, 21, 24.[2]

---

[2] To that end, the petitioner objected (filing 25) to the respondent's introduction as evidence of the briefs by the parties presented to the arbitrator. The petitioner asserts that the legal

4

But the arbitrator was not obliged to whack every one of the parties' moles. The arbitrator's award adequately explained why ProCraft was in breach and how ECC reasonably complied with the termination provision. That ProCraft is unsatisfied with the arbitrator's conclusions is not a reason to vacate the award.

Relatedly, ProCraft argues that the arbitrator explained neither how ProCraft breached the contract, nor whether ProCraft unequivocally repudiated its obligations. But the arbitrator explained that ProCraft, for one reason or another, stopped showing up to work, and would not commit to a time to complete the job. *See* filing 5-4 at 7. While the arbitrator could have been more direct, by calling ProCraft's apparent work stoppage a "material breach" or by expressly characterizing some comment by a ProCraft representative as an unequivocal repudiation, the award adequately sets out ECC's justification for terminating the contract and the basis of ProCraft's liability. Filing 5-4 at 7.

ProCraft also asserts awarding "lost opportunity costs" was a "manifest disregard for the law." Filing 17 at 25. The parties' agreement did not limit or specify damages available.[3] The arbitrator awarded those damages because

---

arguments aren't "evidence," which is true. However, the respondent appears to have attached these briefs not for substance, but as evidence of the arguments presented to, and allegedly ignored by, the arbitrator. *See Stark,* 381 F.3d at 803 (respondent's burden to demonstrate it "clearly stated the law and the arbitrator[] expressly chose not to follow it"). The petitioner's objections are therefore overruled.

[3] ProCraft argues that terms of the "Prime Contract," ECC's contract with the university, were incorporated into the agreement at issue, and that contract limited available damages. But the arbitrator expressly found that while ECC's obligations to the university "flowed down" to ProCraft, "there was no language extending to ProCraft the same rights, privileges,

5

they "were foreseeable at the time of contracting and causally linked to ProCraft's performance issues." Filing 5-4 at 9. ProCraft cites Nebraska law indicating that "lost opportunities" are only recoverable in specific circumstances, but none of the cases relied upon by ProCraft are cited in the arbitrator's decision, nor did ProCraft cite those cases for the arbitrator to ignore. *Compare* filing 17 at 26, *with* filing 18-12. *See Stark*, 381 F.3d at 802-03. The arbitrator's decision to award "lost opportunity costs" was rooted in the "essence of the contract," and he "at least arguably construed the parties' agreement" to include the damages awarded. *Indus. Steel Constr.*, 33 F.4th at 1041. There is no basis to vacate on these grounds.

Finally, ProCraft argues that the award should have been reduced by the amount ProCraft wasn't paid under the contract. Filing 17 at 30. It asserts there was $18,567.37 left on its contract for which the arbitrator did not account. ProCraft doesn't explain how this was a "manifest legal error," as it appears to be a factual issue. The Court declines to delve into this alleged factual error by the arbitrator in calculating ECC's damages. *See Zeidman*, 145 F.4th at 826.

ProCraft asks the Court to modify the award based on the "lost opportunity costs" and  the amount left on the contract. But neither of these bases indicate an "evident material miscalculation." *See* § 11. Rather, ProCraft asks the Court to wade into the "merits of the controversy"—but the Court is not permitted to do so. *See id.*

There are no grounds to vacate or modify the award. The arbitrator set

---

and protections as ECC might enjoy under the prime Contract." Filing 5-4 at 4. ProCraft "disagrees with the arbitrator's conclusion, but whether the arbitrator's interpretation is correct is not a question" the Court can answer. *Indus. Steel Constr.*, 33 F.4th at 1042.

forth a reasoned award that contained no manifest errors of law. The petitioner's objections to the respondent's evidence (filing 25), where not otherwise discussed *supra*, are overruled as moot. Accordingly,

IT IS ORDERED:

1. The petitioner's motion to confirm the arbitration award (filing 1) is granted.

2. The respondent's motion to vacate (filing 16) is denied.

3. The petitioner's objections (filing 25) are overruled.

4. The petitioner is awarded $978,502.32, plus post-judgment interest at the prevailing statutory rate beginning May 30, 2025, per the arbitration award (filing 5-4 at 10).

5. A separate judgment will be entered.

Dated this 24th day of March, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge